STATE OF CONNECTICUT *v.* FERNANDO BOSQUE
(AC 27991)

Bishop, Harper and Beach, Js.

Submitted on briefs January 4—officially released March 18, 2008

*Raymond L. Durelli*, special public defender, filed a brief for the appellant (defendant).

*Jonathan C. Benedict*, state's attorney, *Adam E. Mattei*, special deputy assistant state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

HARPER, J. The defendant, Fernando Bosque, appeals from the judgment of conviction, rendered following a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4), burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and five counts of robbery in the first degree in violation of

General Statutes § 53a-134 (a) (4).[1] The defendant claims that the court improperly instructed the jury with regard to the presumption of innocence. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. At approximately 1:30 a.m. on November 5, 2004, the defendant, his brother, Benjamin Bosque, and Roberto Figueroa went to a Bridgeport apartment, a residence shared by three males and a female, all of whom were college students. The defendant and his accomplices forcibly gained entry to the apartment after ringing the doorbell. The defendant and his brother wore masks and brandished BB guns. Initially, three of the residents were at the apartment along with another male visitor. Thereafter, the fourth resident arrived home from work. At gunpoint, the intruders verbally disparaged, threatened and physically assaulted the occupants of the apartment and forced them into one room. The intruders ransacked the apartment for valuables, taking items such as home electronics, jewelry, mobile phones, cash and automatic teller machine cards. The intruders also forced the victims to reveal their personal identification numbers. During the invasion, the defendant participated in a sexual assault of the female victim. Following their departure from the apartment, the defendant and his accomplices took the stolen items to the home of the defendant's mother and proceeded to a bank where they withdrew money from the victims' bank accounts.[2]

During its charge, the court instructed the jury with regard to the presumption of innocence, in part, as

---

[1] The court sentenced the defendant to a term of incarceration of seventy years, suspended after fifty years, followed by thirty-five years of probation.

[2] Following his arrest, the defendant provided a written statement to the police in which he admitted that he and his brother were present in the apartment at the time in question but stated that he had not sexually assaulted the female victim.

follows: "Let me repeat something you have previously been told, something that is a fundamental principle of our system. In this case, as in all criminal prosecutions, the defendant is presumed to be innocent of the charges against him unless and until proven guilty beyond a reasonable doubt. This presumption of innocence was with this defendant when he was first presented for trial in this case. It continues with him throughout the trial unless and until such time as the evidence produced in the orderly conduct of the case, considered in the light of these instructions on law and deliberated upon you in the jury room, satisfies you beyond a reasonable doubt that he has been proven guilty of one or more of the charges."

The defendant claims that the court's instruction deprived him of his right to a fair trial under the federal constitution in that it infringed on his right to be presumed innocent of each and every charge and diluted the state's burden of proof. The defendant argues that the probable interpretation of the court's instruction by the jury was that the jury should not presume him to be innocent on any count after finding him to be guilty as to *any* of the nine counts of the substitute information.

The defendant illustrates his claim as follows: "Assuming the jurors followed the instructions as given by the trial court, they deliberated [his] guilt on a count by count basis. There is no way of knowing which charge the jurors considered first but, in any case, it is irrelevant. So, for purposes of argument, assume the jurors first deliberated count one, conspiracy to commit robbery. [As to count one], the jurors gave [him] the presumption of innocence he was constitutionally entitled to and, after assessing the credibility of the alleged victims and the self-confessed accomplice, found [him] guilty [as to that count]. The jurors then began deliberations on count two, burglary in the first degree. Once

again, the jurors followed the instructions as given by the trial court. However, when deliberating this count, the trial court's instruction permitted the jurors to disregard [his] presumption of innocence. And, if the jurors disregarded [his] presumption of innocence, the very standard by which they were required to determine guilt beyond a reasonable doubt was absent from the jurors' deliberations."

As a preliminary matter, we note that the defendant did not preserve his claim of instructional error for our review in that he neither filed a written request to charge nor took exception to the charge on this ground at trial. See Practice Book § 16-20. The defendant seeks review of his claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The claim is reviewable because the record provides an adequate basis for review, and the claim of instructional impropriety concerning the presumption of innocence and the burden of proof is of constitutional magnitude. See *State* v. *Lawrence*, 282 Conn. 141, 178 n.22, 920 A.2d 236 (2007), and cases cited therein.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the

instruction misled the jury. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Holley*, 90 Conn. App. 350, 358–59, 877 A.2d 872, cert. denied, 275 Conn. 929, 883 A.2d 1249 (2005).

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle* v. *Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

The United States Supreme Court has observed that the reasonable doubt standard "provides concrete substance for the presumption of innocence . . . ." *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The presumption of innocence embodies the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. . . . And it has long been recognized that an instruction on the presumption is one way of impressing upon the jury the importance of that right. . . . The 'purging' effect of an instruction on the presumption of innocence . . . simply represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial." (Citations omitted.) *Taylor* v. *Kentucky*, 436 U.S. 478, 485–86, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).

Consistent with our obligation to consider the charge as a whole, we note several other parts of the instructions that are relevant to our analysis. In the very beginning of its charge, the court emphasized the jury's obligation to consider separately each count. The court stated: "Whatever your verdict is, it must be unanimous and arrived at separately as to each count." Discussing the concepts of direct and circumstantial evidence, the court stated: "You should keep in mind that regardless of whether direct evidence, circumstantial evidence or a combination of both is relied on for a conviction, all of the elements of the crime must be proven beyond a reasonable doubt before you find the defendant guilty."

Immediately after the court delivered the presumption of innocence instruction at issue, the court emphasized that the state's burden of proof applied to every element of every crime. The court stated: "As I have previously told you, the burden of proof to prove the defendant guilty of any of the crimes for which he is charged is upon the state. The defendant does not have to prove his innocence. This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. . . . The state bears the burden of proof as to each charge. Therefore, you must decide whether the state has borne its burden of proving beyond a reasonable doubt each and every element necessary to prove the crime charged." After discussing the elements of each crime at issue, the court reiterated that it was the jury's duty "to safeguard the rights of the persons charged with a crime by respecting the presumption of innocence, which the law has imputed to each person charged and by making the state meet its burden of proving guilt beyond a reasonable doubt." The court then stated: "If and when the presumption of innocence has been overcome by the evidence and you found beyond a reasonable doubt that the accused is guilty of the crime

charged, then it is your sworn duty to enforce the law and render a verdict of guilty. I remind you that whatever your verdict is, it must be unanimous. I also remind you that you must consider each count of the information separately." Later, after reminding the jurors that they could deliberate only when all jurors are present, the court stated: "[Y]our verdict as to each count must be unanimous and must be considered separately."

Recently, in *State* v. *Gerald W.*, 103 Conn. App. 784, 931 A.2d 383, cert. denied, 284 Conn. 933, 935 A.2d 152 (2007), this court rejected a claim strikingly similar to the one presently before us. In that case, the trial court instructed the jury that "the presumption of innocence remains with [the defendant] unless and until the state proves beyond a reasonable doubt that he is guilty of one or more of those charges" and that "the presumption of innocence remains with the defendant unless and until the evidence . . . persuades you beyond a reasonable doubt that the defendant is guilty of one or more charges." (Internal quotation marks omitted.) Id., 787. The defendant in *Gerald W.* "claim[ed] that it was reasonably possible that the jury was misled and could have believed that the presumption of innocence disappeared after finding him guilty of one of the charged crimes." Id. After reviewing the trial court's charge as a whole, this court concluded that "the court's instructions communicated to the jury that the presumption of innocence applies individually to each charged crime and that it may be overcome as to each specific charge only after the state introduces evidence that establishes the defendant's guilt as to each crime beyond a reasonable doubt." Id., 790.

In the present case, our review of the charge as a whole, including the court's numerous instructions directing the jury to consider each count separately, to hold the state to its proper burden of proof as to each count and to reach a separate decision as to each count,

leads us to conclude that it is not reasonably possible that the court misled the jury as the defendant claims.[3] The instructions at issue in this case are materially similar to those at issue in *Gerald W. Gerald W.*, thus, is controlling, and, in reliance thereupon, we conclude that the defendant's claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Apart from his primary claim, which we have addressed, the defendant also argues as follows: "The trial court never instructed the jurors as to the meaning of the presumption of innocence, i.e., the defendant, at the time of trial, stood before the jurors free of any bias, prejudice or burden arising from his position as the accused and begins trial with a clean slate with no evidence against him." The court's instructions belie this claim; we conclude that the court adequately and unambiguously conveyed to the jury the meaning of "presumption of innocence." The court instructed the jury that the defendant was "presumed to be innocent of the charges against him unless and until proven guilty beyond a reasonable doubt." We already have discussed in this opinion the relationship between the presumption of innocence and the reasonable doubt standard of proof. The court clearly and correctly instructed the jury that the state bore the burden of proving each and every element of the crimes at issue beyond a reasonable doubt, that the jury must base its verdict on the evidence adduced during trial and that the jury was prohibited from drawing any inference from the defendant's status as an accused person. In discussing the information brought by the state, the court stated: "You must not consider the information as any evidence whatsoever of the guilt of the defendant or draw any inference of guilt because he has been charged with a crime."