JUDSON BROWN *v.* COMMISSIONER
OF CORRECTION
(AC 34036)

Robinson, Espinosa and Sheldon, Js.

---

Argued November 15, 2012—officially released March 12, 2013

*John C. Drapp III*, assigned counsel, with whom, on the brief, were *Joseph A. Jaumann*, assigned counsel,

and *Diana M. Gomez*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, Judson Brown, appeals from the denial of his second postconviction petition for a writ of habeas corpus challenging the legality of his 1998 convictions for arson in the first degree and conspiracy to commit arson in the first degree. On appeal, the petitioner claims that the second habeas court improperly rejected his claim that counsel in his first postconviction habeas corpus proceeding rendered ineffective assistance, based on her failure to raise certain claims on his behalf in that proceeding. The court ruled that counsel in the first habeas proceeding was not ineffective for failing to raise the claims in question because the petitioner had procedurally defaulted on those claims in a manner that did not justify their later assertion under the cause and prejudice standard of *Wainwright* v. *Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and, thus, he could not have prevailed on such claims in his first habeas proceeding. On that basis, the second habeas court determined that the first habeas counsel's failure to raise those claims was not prejudicial to the petitioner in that proceeding. We affirm the judgment of the habeas court.

The following procedural history underlies the present appeal.[1] In October, 1996, the petitioner was arrested and charged with two counts of arson in the first degree in violation of General Statutes §§ 53a-111

---

[1] For the underlying factual history of the crimes for which the petitioner was convicted, see *State* v. *Brown*, 256 Conn. 291, 294–97, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

(a) (3) and 53a-111 (a) (4) and one count of conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-111 and 53a-48, in connection with a fire that occurred in August, 1996, at a building in New Haven, which was owned by an associate of the petitioner. The state alleged that the petitioner committed the crimes in question to collect a share of the insurance proceeds paid out in connection with the fire.

After his arrest, the petitioner, claiming indigency, applied for the services of a public defender for his defense at trial. His application was granted and, in December, 1996, Attorney Mary Haselkamp, an assistant public defender, filed an appearance on his behalf. Two years later, in October, 1998, as the scheduled date of trial approached, Attorney Francis Mandanici, an assistant public defender, also appeared in the case to assist in the petitioner's defense.

Shortly thereafter, however, on November 12, 1998, the state filed a motion for a judicial determination of the petitioner's eligibility for public defender services. The following day, the petitioner's public defenders, upon reviewing the state's motion and supporting documentation and after conducting their own investigation of the matter, determined that the petitioner was not, in fact, eligible for public defender services. On the basis of that determination, they promptly filed a motion to withdraw their appearances for the petitioner pursuant to General Statutes § 51-297 (c).[2] Although jury selection in the petitioner's trial was scheduled to begin shortly after the motion to withdraw was filed, the public defenders believed, correctly, that if their motion

---

[2] General Statutes § 51-297 (c) provides in relevant part: "If a public defender . . . is appointed to provide assistance to any person and he subsequently determines that the person is ineligible for assistance, the public defender . . . shall promptly inform the person in writing and make a motion to withdraw his appearance . . . as soon as it is practical to do so without prejudice to the case, giving the defendant a reasonable time to secure private counsel. . . ."

to withdraw were granted, the court would grant the petitioner a reasonable continuance to retain private counsel for his defense at trial. In fact, the petitioner's trial did not begin until approximately six months after the court granted the motion to withdraw on November 16, 1998.

The petitioner initially chose to pursue an appeal to the court from his public defenders' determination that he was ineligible for their services pursuant to General Statutes § 51-297 (g), which provides: "If the Chief Public Defender or anyone serving under the Chief Public Defender determines that an individual is not eligible to receive the services of a public defender under this chapter, the individual may appeal the decision to the court before which the individual's case is pending." On November 18, 1998, at the beginning of the evidentiary hearing on his statutory appeal, however, the petitioner expressly waived his right to continue prosecuting the appeal. Thereafter, on December 11, 1998, having decided to represent himself at trial rather than hire private counsel, the petitioner filed a pro se appearance.

The petitioner's jury trial, in which he represented himself, commenced in May, 1999. At the conclusion of the trial, the petitioner was convicted of all charges against him. Ultimately, he was sentenced on those convictions to a total effective sentence of twenty-five years imprisonment.

Thereafter, the petitioner appealed his convictions to our Supreme Court, on the sole ground of prosecutorial impropriety.[3] Upon rejecting that claim, the court affirmed the judgment of conviction. *State* v. *Brown,*

---

[3] On direct appeal, the petitioner specifically claimed "that the state's attorney improperly: (1) conducted the voir dire; (2) criticized the defendant's pro se trial techniques in front of the jury; (3) appealed to the juror's emotions; and (4) commented upon the defendant's failure to testify." *State* v. *Brown,* supra, 256 Conn. 297.

256 Conn. 291, 293–94, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

The petitioner filed his first postconviction petition for a writ of habeas corpus on June 7, 2002.[4] In that proceeding, he was represented by Attorney Justine Miller, special public defender.[5] In the petition on which he went to trial, the petitioner challenged his arson and conspiracy convictions on four grounds: improper withdrawal by trial counsel from his case; ineffective assistance by his trial counsel; judicial misconduct by the trial judge; and ineffective assistance by his appellate counsel. The habeas court, *A. Robinson, J.*, denied the petition, and this court later affirmed its judgment on appeal. *Brown* v. *Commissioner of Correction*, 92 Conn. App. 382, 383, 885 A.2d 761 (2005), appeal dismissed, 281 Conn. 466, 915 A.2d 870 (2007).[6]

In the present case, the petitioner's second postconviction habeas corpus proceeding, the petitioner claims that his counsel in the first habeas proceeding rendered ineffective assistance to him by: (1) failing to raise the claim that he was entitled to a new trial because he was deprived of his constitutional right to counsel at trial; and (2) failing to raise the claim that his appellate counsel was ineffective in failing to raise the aforementioned right to counsel claim on his direct appeal. The respondent commissioner of correction (commissioner) answered this second habeas petition by denying both of the petitioner's claims and asserting, as

---

[4] The petitioner originally filed a pro se petition for a writ of habeas corpus on or about February 14, 2001. In that habeas proceeding, however, the operative second amended petition was filed by his counsel on June 7, 2002.

[5] Miller's representation of the petitioner, which the petitioner claims was constitutionally defective, is the subject of the present appeal.

[6] On appealing from the judgment of the habeas court in his first postconviction proceeding, the petitioner claimed "that the court improperly concluded that he was not deprived of the effective assistance of counsel because of the alleged failure of his public defenders to ensure that he received his file promptly following their withdrawal from his criminal case." *Brown* v. *Commissioner of Correction*, supra, 92 Conn. App. 383.

special defenses, that his claims were barred by the doctrine of res judicata, or, in the alternative, that the doctrine of deliberate bypass prohibited the petitioner from raising those claims.[7] Following an evidentiary hearing, the court, *Fuger, J.*, in a thorough memorandum of decision, denied the petition on the ground of lack of prejudice because the petitioner could not have prevailed on either unraised claim on habeas corpus by reason of procedural default of such a manner that prevented the petitioner from presenting any evidence that would have allowed the court "to conclude that there was any cause or prejudice to override the procedural default." The court granted the petitioner's subsequent petition for certification to appeal from that judgment on August 26, 2011, and this appeal followed.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Morris* v. *Commissioner of Correction*, 131 Conn. App. 839, 842, 29 A.3d 914, cert. denied, 303 Conn. 915, 33 A.3d 915 (2011).

[7] Specifically, the commissioner claimed that, to the extent that the petitioner was attempting to assert one or more claims that had been already raised and decided either on direct appeal or in his first postconviction habeas proceeding, the doctrine of res judicata applied to bar relitigation of those claims because he had already had the opportunity fully and fairly to litigate those claims. In the alternative, the commissioner claimed that, to the extent that the petitioner was attempting to assert one or more claims that he could have raised either on direct appeal or in his first postconviction habeas proceeding, but did not, the petitioner deliberately bypassed the opportunity to contest those issues, and had failed to show cause and prejudice as to why the subject claims were not raised in prior proceedings.

The intersection of the petitioner's claim of ineffective assistance of counsel with the doctrine of procedural default implicates both the "performance and prejudice" test of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and the "cause and prejudice" standard of *Wainwright* v. *Sykes*, supra, 433 U.S. 87. As a threshold matter, "[t]o succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . The claim will succeed only if both prongs are satisfied. . . . As applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. Thus . . . the petitioner will have to prove that . . . prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Citation omitted; internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 133 Conn. App. 96, 101–102, 33 A.3d 883, cert. denied, 303 Conn. 941, 37 A.3d 153 (2012).

In the present case, the court ruled that the petitioner was unable to demonstrate that Miller's allegedly deficient performance in the first habeas proceeding prejudiced him, as is required to succeed on his ineffective assistance of counsel claim. According to the habeas court, because the petitioner failed to prosecute to conclusion his statutory appeal from the public defenders' determination that he was ineligible for their services at trial, in the manner prescribed by § 51-297 (g), he

forfeited his right to challenge that determination in any subsequent proceeding, and he failed to demonstrate "cause and prejudice" for not prosecuting his statutory appeal.

In *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 589 A.2d 1214 (1991), our Supreme Court adopted the "cause and prejudice" standard, espoused by the United States Supreme Court in *Wainwright*, which limits the reviewability of claims first raised in a habeas corpus action. In *Johnson*, the court held, more particularly, that the cause and prejudice test was applicable to procedural defaults that occurred at the trial level. *Johnson* v. *Commissioner of Correction*, supra, 419. Later, in *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993), our Supreme Court applied the cause and prejudice standard to the failure to raise a claim on direct appeal. "Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . ."[8] (Internal

---

[8] We note that, although "[a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings"; (internal quotation marks omitted) *Dennis* v. *Commissioner of Correction*, 134 Conn. App. 520, 531, 39 A.3d 799 (2012); it is well established that "the sixth amendment [also] embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (Emphasis in original; internal quotation marks omitted.) *State* v. *Flanagan*, 293 Conn. 406, 417, 978 A.2d 64 (2009). Here, the trial court informed the petitioner of his statutory right to appeal the public defenders' determination before he chose to file a pro se appearance. Accordingly, because the petitioner voluntarily and intelligently elected to waive his right to pursue his statutory appeal to completion, the cause and prejudice test applies to this case.

quotation marks omitted.) *Brunetti* v. *Commissioner of Correction*, 134 Conn. App. 160, 168, 37 A.3d 811, cert. denied, 305 Conn. 903, 44 A.3d 180 (2012). The burden of proving cause and prejudice for a procedural default rests on the petitioner. *Johnson* v. *Commissioner of Correction*, supra, 409.

Claiming that he did not procedurally default on his right to counsel claim, the petitioner in the present case argues that he had good cause for discontinuing his statutory appeal from his public defenders' determination that he was not financially eligible for their services at trial. According to the petitioner, "he was concerned about pursuing the appeal of the determination that he was ineligible for public defender services because it would require him to give testimony about his financial situation and the criminal charges were arson, purportedly for profit." The petitioner explains that his "testimony [in the evidentiary hearing appealing the determination] would have presumably painted a bleak picture of the petitioner's finances. This would have been useful evidence in an arson prosecution which involved allegations of a building burning shortly after an insurance policy was purchased on the building and its contents, and a woman associated with the petitioner thereafter collecting $412,000 in insurance proceeds as a result of the fire."[9] As support for his claim, the petitioner relies on *Simmons* v. *United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), and argues that, by requiring him to appeal from the public defenders' eligibility determination, the trial court improperly forced him to choose between asserting his sixth amendment right to counsel and his fifth amendment privilege against self-incrimination.

The petitioner's reliance on *Simmons* is unfounded. There, the United States Supreme Court held that by

---

[9] See footnote 1 of this opinion.

permitting the government to make substantive use of a defendant's self-incriminatory testimony concerning his ownership of certain seized property, which was necessary to establish his personal expectation of privacy in such property and resulting right to bring a fourth amendment challenge to the legality of its seizure and later search by government agents, the court would unduly burden the exercise of his fourth amendment rights with the waiver of his fifth amendment privilege against compelled self-incrimination. *Simmons* v. *United States*, supra, 390 U.S. 389–94. Accordingly, the court granted the defendant relief from the tension between these two fundamental rights by affording him immunity from the use of his suppression testimony against him in the government's case-in-chief at trial. Id., 394.

Here, the petitioner faced no such dilemma. At the evidentiary hearing on his statutory appeal from his public defenders' determination that he was ineligible for their services at trial, the defendant was not required to testify or otherwise to provide evidence that was in any way incriminating. Rather, the petitioner suggests that, in making his claim of eligibility for public defender services he would have "[painted] a bleak picture of [his] finances," thereby revealing a potential motive for committing arson for profit. Such a situation does not implicate *Simmons*.

It is well established that the United States constitution does not forbid "every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." *Chaffin* v. *Stynchcombe*, 412 U.S. 17, 30, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973); see also *Ohler* v. *United States*, 529 U.S. 753, 757, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000) ("the [state] and the defendant in a criminal trial must make choices as the trial progresses"); *Corbitt* v. *New Jersey*, 439 U.S. 212, 218, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978)

("not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid"). Moreover, in *McGautha v. California*, 402 U.S. 183, 212, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971), the court stated that although it did not dispute the result in *Simmons*, its rationale was "open to question." The court stated: "The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. . . . Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the [c]onstitution does not by that token always forbid requiring him to choose." (Citation omitted; internal quotation marks omitted.) Id., 213.

In the present case, given the fact that the petitioner's evidentiary hearing did not condition his claim of eligibility upon the admission of inherently inculpatory facts, burdening the petitioner with the choice whether to prosecute his statutory appeal created no unconstitutional tension between the assertion of conflicting rights of the sort that was recognized in *Simmons*. This court thus concludes that the habeas court properly found that the petitioner has failed to show cause and prejudice for his failure to prosecute to conclusion his statutory appeal from the determination of his public defenders that he was not eligible for their services at trial.[10]

Our conclusion, that the habeas court properly found that the petitioner procedurally defaulted on his claim regarding the withdrawal of his trial counsel by reason of their determination that he was ineligible for public

---

[10] Because we have concluded that the petitioner has failed to demonstrate good cause for his failure to raise the subject claims at trial and/or on direct appeal, we need not reach the issue of whether the petitioner has demonstrated prejudice, under the conjunctive *Wainwright* standard, from the impropriety alleged in his second amended habeas petition.

defender services, leads us to conclude that, even if the petitioner's first habeas counsel had raised a challenge to that withdrawal in the petitioner's first habeas proceeding, there is no reasonable probability that that court would have granted relief to the petitioner on the basis of that claim. See *Williams* v. *Commissioner of Correction*, supra, 133 Conn. App. 101–102. We agree with the habeas court that the petitioner has failed to demonstrate that Miller's assistance prejudiced him, and he cannot prevail on his claim that Miller was ineffective in failing to raise the subject claims at his first habeas trial. *Bosque* v. *Commissioner of Correction*, 130 Conn. App. 383, 387–88, 23 A.3d 90 ("[a] reviewing court can find against a petitioner on either [the performance prong or the prejudice prong], whichever is easier" [internal quotation marks omitted]), cert. denied, 302 Conn. 932, 28 A.3d 344 (2011). The petitioner, therefore, cannot prevail on his claim that the second habeas court improperly rejected this claim.

The judgment is affirmed.

In this opinion the other judges concurred.